Good morning, Your Honors. I'd like to reserve five minutes of my time for rebuttal. All right. You'll need to keep up with your time. I will. Thank you. May it please the Court, my name is Jason Stover, and I'm here on behalf of the Anoka County defendants, which includes former Sheriff James Stewart and Detective Larry Johnson. Your Honors, we're here today because the district court below became the first federal court in the country to find that a crime victim has standing to challenge the manner in which the executive branch investigates a crime against her. Counsel, let me ask a preliminary question. We don't normally have jurisdiction over interlocutory appeals on standing determinations. Why do we have jurisdiction here? Your Honor, this court under the collateral order doctrine does have jurisdiction to consider standing. This court has done that on several occasions. We cited in the brief the two cases I would call out are Johnson v. Griffin, where the court specifically found that the court does have jurisdiction to consider standing. Is it because it's, in this case, because it's intertwined with the qualified immunity jurisdiction? It is, Your Honor. It is intertwined with the qualified and official immunity issues. And even if it weren't in the Dewey construction case, this court made clear that on an appeal of any kind, the court has not just the ability but the duty to consider whether the parties have standing, because if there's no standing, then there's no jurisdiction to hear the case in a federal court. So I do want to talk a little bit about what the district court did below. No court in the country has ever found what the district court found. Many courts have found the opposite, but the district court became the first court in the country to find the crime victim can challenge the way that the executive branch investigates a crime against her. Now, when this issue first came up, the district court agreed with us that the plaintiff, Jane Doe, does not have standing. The plaintiff appealed that decision, and while the case was pending on appeal, this court issued its decision in Pratt v. Helms and asked the district court to take a look at that case and consider whether that might change his mind. The court should have found that no. If anything, the court should have found that Pratt confirmed his original analysis, but instead he interpreted what this court was trying to do with its remand as encouraging him to find the opposite, and that's where we believe he erred. So I want to talk a little bit about what this court did in Pratt. The district court below the first time applied the Supreme Court's decision in Linda R.S. and this court's decision in Parkhurst to find that a crime victim doesn't have standing to challenge the way that a crime is investigated. This court decided Pratt, which was a, Pratt did not change that rule. What it did was confirm it. The district court had interpreted Linda R.S. and Parkhurst, along with the Fifth Circuit's decision in Lefebvre, to hold that that standing rule applies not just to criminal prosecution, but also to criminal investigation. In Pratt, this court noted that in Parkhurst it had left that issue open. It was not explicitly decided. But that's what this court did in Pratt. This court made it very clear that the standing rule applies not just to prosecution, but also to investigation. And this court remanded, we believe this court remanded the case so the district court could say exactly that, that that issue, had it not been clear before, was now clear. But instead, the district court took a case in Pratt where this court found the plaintiff did not have standing and used that to create a doctrine where a crime victim now does have standing, contrary to everything the court had already previously found. The district court relies really just on 12 words. There's 12 words in the entire Pratt opinion that the court relies on, and I'm just going to quote those because I think it's important. This court said, quote, A victim has no constitutional right to an investigation of a crime committed against him. And here's where we get to the 12 words. At least whereas here, the victim brings a class of one equal protection claim. And that made sense because in Pratt, that's what this court was facing, was a class of one equal protection claim. And so it made sense that this court would include that language. But what the district court did is take that limitation, that 12 words, and find what this court actually meant to do was say that anybody who brings anything other than a class of one equal protection claim now does have standing. And we would submit, Your Honors, that if that's what this court meant to do, there's not a lot of guidance in Pratt to tell courts how they should apply that doctrine or what the parameters of it might be. It's literally just those 12 words. In a case where this court found the plaintiff did not have standing. So we believe that the district court erred by trying to read too much into what this court did in a case that's really quite different than what it was dealing with. It's important to note that as this court decided to Pratt, it relied on basically all the same cases the district court relied on the first time when it dismissed this case for lack of standing. This court cited the Lefebvre decision, which is itself a class-based claim. This court also cited Linda R.S. from the Supreme Court, which again was a class-based claim. This court also cited its own decision in Parkhurst, which was also a class-based claim. And so the idea that this court in Pratt actually meant to say that anybody who alleges a class-based claim does have standing is certainly contradicted by the three cases this court relied on in making its own Pratt decision. Now, to its credit, the district court made clear it was not sure that this is actually what this court meant to do. The district court says in its opinion on page 10, it's less obvious that the court really meant to do that. At page 14, he points out that other signs point in the opposite direction of what he ultimately found. It's clear the district court was struggling to try to understand quite what this court meant to do when it remanded the case. But, Your Honors, we believe that what this court meant to do was to tell the district court, there's this new decision, Pratt, the court wasn't aware of it before, and it should fold that decision into its ruling to make a more complete ruling. And instead of doing that, it reversed itself, and we think that was incorrect. Counsel, would you agree that there could be standing if the allegation is refusal to protect rather than investigate? I do agree with that, Your Honor. So where is the line between those two? For example, if there was a refusal to investigate any crimes against a particular racial group, wouldn't that group effectively be denied protection rather than just investigatory services? It's a good point, Your Honor. I think that's where courts have struggled with that line. The Supreme Court in Linda R.S. itself specifically addresses that and says that non-prosecution does not rise to the level of non-protection, that there probably is a line out there somewhere, but that's not what's been pled here. The plaintiff does not plead anything like that in her complaint. The district court specifically found that she doesn't make any kind of a protection claim at all of any kind. And so that line is out there somewhere, but it's not presented in this case. It's interesting, I think, that this court has so frequently cited the District of Maryland's decision in Pocomoke City because that case is really on all fours with this one. The plaintiff in Pocomoke City, it was three women who were sexually assaulted. They sued a county defendant claiming that there was a policy of discriminating against women because they didn't investigate sexual assaults properly. And this court quoted some language from that decision, and I think that language is also important, and so I'm going to read it here. Pocomoke City said, quote, The court is not aware of a constitutional, statutory, or common law right that a private citizen has to require a public official to investigate or prosecute a crime. And that's our case exactly. That's exactly what happened here. Given that this court has itself relied on that very language in the standing area, we believe that's really all this court needs to look at. The contradiction we have here only arises because the district court tries to use a bunch of cases that don't find standing to find that someone does have standing. And, you know, on the other side of that equation, there's not one. There's not one federal court that's done that. The Lefebvre decision issued by the Fifth Circuit does a pretty exhaustive survey of what the law was and finds there's no law on the other side. Our brief cites 15 federal decisions. And in addition to the ones I've already mentioned, there's sort of the big ones, there's 15 other cases where this court and other federal courts have found a crime victim just does not have standing. The only case that the district court could cite is the Elliott Park decision from the Ninth Circuit. But, again, Lefebvre talks exactly about that and says it's not even a standing case. The court doesn't talk about standing. What the court does is sort of assume the parties have standing and then go on to resolve the issue. But, again, the Supreme Court has said many times that just because an issue isn't addressed doesn't mean it's not there when it comes to a jurisdictional issue. And so the Elliott Park case is the only case the court can cite on the other side, and it doesn't even stand for that proposition. I'd like to reserve the remainder of my time unless the court has questions. All right. Thank you. Mr. Hagedorn, you may proceed. Thank you. May it please the Court. Good morning. My name is Adam Hagedorn, and I represent Jane Doe in this matter. When this court reversed and remanded the first appeal, it gave the directions and reframed the issue, saying the failure to timely investigate the crime of sexual assault due to alleged discriminatory animus against women and girls is what this case was about. It's not about a failure to prosecute case, as the Anoka County defendants keep asserting. We're still in the pleading stage five years into this case. This is the second time here on the standing issue. And when the court reversed, the district court recognized that the issue had to be reframed and then denied appellant's motion to dismiss under that properly framed issue. Yet today, and through its briefing, Anoka County continues to argue that this is a failure to prosecute case citing to Linda R.S. and the Lefebvre case and Parkhurst. Are you arguing that there's a distinction in the law between failure to prosecute and failure to investigate? Yes, Your Honor. How do you get around Parkhurst and Pratt? As it comes to Parkhurst, or sorry, I'll start at Pratt, because that was the instruction that the court gave, and then I'll get into Parkhurst. Parkhurst didn't involve a protected class, and it was based on the failure to prosecute based on the identity of the assailants, not on who the victim was. That was an assault case where Mr. Parkhurst brought the case because he hadn't, no charges had been brought against assailants because they were related to the county clerk, or the clerk of courts in the city. What we're alleging here is that Jane Doe was discriminated against on the basis of sex or gender in the administration of the police services and public services, which is a violation of the 14th Amendment. Because in this case, she was 14 when she was raped, she underwent an intrusive test to provide evidence in a sexual assault kit, then she was told by her, the detective, there's no evidence in that kit. Then she finds out 15 years later that the kit hadn't been tested, and along that way, there were almost 500 other sexual assault kits that had not been tested. The complaint, right now, under a plausibility standard, asserts a cause of action that there is discrimination against women and girls because Anoka County had almost 500 sexual assault kits that had not been tested. That's doubled on this because the detective lied to Jane Doe about the results of her test, only that she could find out 15 years later she'd been lied to, and that the evidence, there was evidence in that kit, and the evidence pointed to the man that she said had raped her when she was 14. At no point in the complaint is there any request to prosecute the assailant. There are two separate injuries here. There's the rape, and then there's Anoka County's failure to investigate that rape under the sheriff, and then lie about it. Now, when it comes to Parkhurst, Parkhurst is, excuse me, Your Honor. Now, Parkhurst involves another case that points to, there's language in Parkhurst that says that police cannot discriminate in the administration of their services. Ultimately, it concludes, though, that this plaintiff did not have standing, but that language is important because under the Elliott Park case and the Estate of Macias case from the Ninth Circuit, which are persuasive and lead to that, the police could not discriminate against women on the basis of sex or gender. In the Macias case, that was the whole thing, and then the Elliott Park case, that was a failure of the police to arrest one person based on their race and discriminate against another, the driver, based on their race. Those cases combined with the conclusion in Parkhurst that the police can't discriminate provides support for Jane Doe's claim here that she has a cause of action under the 14th Amendment because Anoka County discriminated against her in the administration of the police services. That's not just a class of one. It's not just Jane Doe bringing that. There is a policy and practice of the Anoka County Sheriff's Office to not test those kits. So it's not her standing alone. And the allegations say, upon information and belief, those sexual assault kits are mostly made up of women and girls. Is that information and belief pleading sufficiently specific to be plausibly pled? I'm sorry, Your Honor? All right. You've got to plausibly plead your cause of action, right? We're still here at the motion to dismiss, so in the end, that's part of our dance that we're dealing with, right? Right.  The heart of your claim, because you've got big problems if you can't say, this is a gender discrimination case, right? Because otherwise, it's going to be just a failure to investigate or a failure to prosecute. So you've got to have a hook that makes it something different. And your hook is that they didn't test rape kits, and on information and belief, they're mostly girls and women. And my question is, is that pled with sufficient specificity to survive a motion at this stage? At this stage, yes, it is. Because what we have is the state report showing how many sexual assault kits weren't tested. What we have is a rape kit that we know wasn't tested in somebody who was lied to. If there wasn't a reason to test that kit, there'd be no reason to lie about it. The nexus that I'm looking for is the gender nexus. And what you've got is on information and belief, they're mostly women and girls. Yes, sir. And I assume you have the report. Did it identify the victims by gender at all, or does it just say we have 500 kits that were never tested? No, it doesn't identify anybody. It was attached to the complaint. I don't believe it identifies them by gender or sex. That at least survives the motion to dismiss phase of this case. Because based on all the cases that have been cited here regarding sexual assault kits, they point to women and girls. It's not just an Anoka County issue. There's plenty of cases that have addressed this. But when it comes to just whether or not there's standing for that, the allegations point to there's a discriminatory animus here. And that's the hump that we need to get over here in this motion to dismiss phase. Now, one of the other issues, earlier we were talking about or we discussed a failure to prosecute versus a failure to investigate. And there's an important distinction there between the roles of a prosecutor and the roles of a police officer. And where that comes into, falls into the immunity arguments here, where a prosecutor has absolute immunity in their prosecutorial decisions. And in the Lefebvre decision, the court concluded that she did not have standing to sue the prosecutor when they conspired with the sheriff and her assailant to not bring charges against the assailant. In our case, we did not bring a case against the Anoka County Attorney's Office. We brought the case against the sheriff because absolute immunity does not apply to police officers. And when the cases start conflating prosecution with investigation, they're cloaking police officers with an absolute immunity that's reserved for prosecutorial decisions. And there's ample case law in Supreme Court cases to say that's not what happens with police officers. And even prosecutors that perform a police function aren't protected by absolute immunity. So there is an exception there. Can this panel make that conclusion or are we controlled by Parkhurst to treat prosecutorial discretion and investigatory discretion the same? The panel can make that decision because it's the difference in this between Parkhurst, which involved a failure to prosecute, and Lynda R.S., which involved a failure to prosecute, and Lefebvre, which involved a failure to prosecute. The court can make those decisions because of the Supreme Court decision in Harlow. They recognize that judicial, prosecutorial, legislative functions require absolute immunity, but protection has extended no further than its justification has warranted. The Supreme Court in Buckley v. Fitzsimmons, that goes to the exception I was talking about where a prosecutor acts as a police officer, they're not cloaked with absolute immunity. And in Pearson, the United States Supreme Court said the common law has never granted police officers an absolute and unqualified immunity. When we're talking about an investigation by a police officer, an investigation can't be done in a discriminatory fashion. And that's what brings us to the 14th Amendment in this case. And it ties in with their overall role and their qualified immunity, not an absolute immunity. And that's the difference between the failure to prosecute and the failure to investigate. And none of the cases get into those details when it comes to these types of discrimination cases like this one. And that's the important distinction, and that's the reason why Jane Doe has standing in this case, and the case should proceed to discovery.  Your Honor, if the Court has no further questions, and I have two minutes left, I yield my time. That is the arguments I have on standing here. All right. That's your choice. Thank you, Your Honor. Thank you very much. Mr. Stover. Thank you, Your Honors. I just have three points I'd like to address. Counsel continues to try to draw this distinction between prosecution and investigation. But again, I mean, that's literally what this Court did in Pratt. This Court said in Pratt, quote, a victim has no constitutional right to an investigation of a crime committed against them. And this Court called out that previously in Parkhurst, the Court had dealt with prosecution, and Linda R.S. had also talked about prosecution. The question before the Court in Pratt was whether to extend that doctrine to investigation. And this Court said, yes, it's the same. So this artificial distinction they tried to draw, this Court has resolved that. I mean, there's no further question about that in the law. Did we fail to identify the underlying basis for perhaps a reasonable distinction between prosecutorial discretion and investigation by police officers which have less immunity? I don't think so, Your Honor. Because again, every federal court in the country had come down the same way. There's no cases ever found that there's a distinction between prosecution and investigation. And even stepping back further, if you look at kind of the point of that, you know, what are we trying to accomplish here? It's the proper role of the judicial branch versus the executive branch. And does a federal court want to sit in judgment of what an executive branch official chooses to do in a prosecution? And the answer is obviously no. The Court has said that a bunch of times. And is it any different for an investigation? And that's what this Court said in Pratt, citing all the previous cases that had come before. The Lefebvre Court also talks quite a bit about that. After the Fifth Circuit Lefebvre opinion, the case continued on, and there's a district court opinion involving the sheriff. And that court also goes through and does a lot of analysis of why there's no distinction between prosecution and investigation. The second thing the plaintiff tries to do is say, you know, they're not asking for anybody to be prosecuted, they're just suing for damages. But that also doesn't make any difference. We cite the James v. Willis case out of the Second Circuit. The Court dealt with that exact problem. It basically says you can't give yourself standing by changing the remedy that you seek. You either have standing or you don't. It doesn't matter if you're suing for damages or injunctive relief. You know, the Parkers plaintiff also sued for damages, didn't have standing. The Lefebvre plaintiff sued for damages, didn't have standing. So did the Pocomoke City plaintiffs. So, again, no court has ever drawn that distinction either. And I'd like to close with the question that Judge Erickson was asking about, whether there's an Equal Protection Clause claim here. That's another problem that we've addressed quite a bit in our brief. There's not. There's not enough facts put here for an Equal Protection Clause claim. Well, it's all throughout the complaint. Sure. They certainly allege. They allege the claim. But what are the facts that they allege? The only fact that they allege is that there's 495 untested kits. That's the only fact in the entire complaint. Well, on information and belief, they allege that they're mostly for women and girls. Yes. It alleges following an unwritten and ongoing policy or custom of responding differently and affording less protection to sexual assault victims who were almost exclusively women and girls. Yes, Your Honor. Those are characterizations. Those are not facts. There are facts that could be pled, right? You could plead. You could get this information. I mean, certainly under the Minnesota Government Data Practices Act, this is public information. They could do some of this investigation and put that into their complaint. The Marlow case that we cite from the Northern District of California does a nice job of explaining what you need to plead to bring a claim like this. And what you need to plead is facts. It's not enough to just say there's 495 kits. It's probably all women and girls. That means there's discrimination here. But how many cases are investigated? How many non-sexual assault cases have forensic evidence? What percentage of those cases involve crime lab testing? They allege 495 kits over 15 years. Is that all the sexual assaults that were investigated during that time? Is that a fraction of them? How does Jane Doe fit within those two categories? Is she more similar to the people who had their kits tested? Or is she more similar to the people who didn't have their kits tested? We have a line of cases that talk about conclusory allegations that are fact devoid. Is that really what your argument here is that these allegations are mere conclusions masquerading as factual allegations? Yes, Your Honor. I think that's exactly right. There are facts that could be pled. The Marlow case does a good job of identifying what those facts should be. And those are wholly absent from the complaint here. There's just no federal claim, an equal protection claim, based on the facts that have been pled as the complaint stands right now. That's all my time, unless the Court has questions. Very well.